# 24-0607-cv(L), 24-0510-cv(XAP)

# United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

NAVIGATORS INSURANCE COMPANY,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

GOYARD, INC.,

*Defendant-Appellee-Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-APPELLANT-CROSS-APPELLEE

FRANK JORDAN
KENNEDYS CMK LLP
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004

– and –

STEPHEN V. RIBLE
MENDES & MOUNT LLP
750 Seventh Avenue
New York, New York 10019
(212) 261-8000

*Attorneys for Plaintiff-Appellant-
Cross-Appellee*

CP COUNSEL PRESS     (800) 4-APPEAL • (330212)

## *CORPORATE DISCLOSURE STATEMENT*

Navigators Insurance Company, a New York corporation, is a wholly-owned subsidiary of The Navigators Group, Inc., a Delaware corporation. The Navigators Group, Inc. is a wholly-owned subsidiary of The Hartford Financial Services Group, Inc., a Delaware corporation. The Hartford Financial Services Group, Inc. is a publicly traded corporation that has no parent corporation. To the best of our knowledge, no publicly held corporation currently owns 10% or more of Hartford Financial Services Group, Inc.'s common stock.

<div style="margin-left:40%">

Respectfully submitted,
KENNEDYS CMK, LLP
By:    /s/ Frank Jordan
        Frank Jordan
        /s/ Stephen V. Rible
        Stephen V. Rible
        570 Lexington Avenue
        New York, NY 10022
        Office: (212) 252-0004
        Frank.Jordan@Kennedyslaw.com
        Stephen.Rible@Kennedyslaw.com
        Attorneys for Plaintiff-Appellant-
        Cross Appellee, Navigators Insurance
        Company

</div>

## *TABLE OF CONTENTS*

*Page*

CORPORATE DISCLOSURE STATEMENT ..........................................i

TABLE OF CONTENTS ......................................................... ii

TABLE OF AUTHORITIES ....................................................iv

PRELIMINARY STATEMENT ................................................1

JURISDICTIONAL STATEMENT ...........................................4

STATEMENT OF ISSUES PRESENTED FOR APPEAL ...................5

STATEMENT OF THE CASE .................................................6

    A.    Background .............................................................6

    B.    The Navigators Ocean Marine Insurance Policy ..................8

SUMMARY OF ARGUMENT ...............................................11

APPLICABLE LAW ..........................................................14

STANDARD OF REVIEW ...................................................14

ARGUMENT ..................................................................15

    I.    The District Court Erred as a Matter of Law by Not Granting Navigators' Motion for Summary Judgment against Goyard.............15

        A.    The District Court Erred as a Matter of Law In Not Granting Navigators Summary Judgment by Interpreting Endorsement No. 4 of the Policy to Incorporate Language Not Contained within the SR & CC Warranty and by Refusing to Interpret Exclusion 9 (E) in Endorsement No. 4 as Incorporating Only the SR & CC Warranty (Clause 65) in the Policy ................................21

        B.    The District Court Erred as a Matter of Law In Not Granting Navigators Summary Judgment by Interpreting the Insurance Contract so as to Render the Coverage Provisions of Endorsement No. 4, and the Exclusions from Coverage therein, as Meaningless and Superfluous ..............................................................24

C.     The District Court Erred as a Matter of Law by Granting, in part, Goyard's Motion for Summary Judgment against Navigators ....................................................25

D.     The District Court Erred as a Matter of Law by Determining that Navigators Does Not Dispute that the SR & CC Endorsement, Endorsement No. 1, Takes Precedence over the SR&CC Warranty within the Policy with Respect to Goods Stored at Retail Locations Covered by Endorsement No. 4 ...............................29

II.    The District Court Erred as a Matter of Law by Considering Certain Extrinsic Evidence with respect to the Insurance Contact, and Failing to Consider Navigators' Expert Affidavit, and/or the Affidavits of Navigators' Employees Addressing the Issue of Custom and Practice in the Industry Concerning the Wording and Application of Industry Standard Clauses Found in the Policy ...................................................31

III.   The District Court Erred as a Matter of Law in Drawing Factual Inferences in favor of Goyard and against Navigators by Applying the Rule of Contra Proferentem when the Insurance was Negotiated by Sophisticated Parties: Goyard with its broker, Marsh; and the Insurer, Navigators ..........................42

IV.   The District Court Erred as a Matter of Law by Incorrectly Applying a Ten Percent "Premium" in Addition to the Amount of Invoice, as the Goods Subject to Goyard's Claim are "Raw Materials, Supplies in Storage, Used Goods," which are Excluded from the Ten Percent "Premium" under Express Terms of the Policy ...........................................................................44

CONCLUSION ...........................................................................................46

## TABLE OF AUTHORITIES

**Page(s)**

*Cases:*

*Aegis Ins. Services, Inc. v.*
  *The Port Authority of New York and New Jersey*,
  737 F.3d 166 (2d Cir. 2013) ................................................................................20

*Antilles S.S. Co., Ltd. v. Members of American Hull Ins. Syndicate*,
  733 F.2d 195 (2d. Cir. 1984) ...............................................................................37

*Binghamton-Johnson City Joint Sewage Bd. v. Am. Alternative Ins. Corp.*,
  2015 WL 5023650 (N.D.N.Y. Aug. 25, 2018) ............................................... 40, 41

*Century Indem. Co. v. Aero-Motive Co.*,
  254 F. Supp. 2d 670 (W.D. Mich. 2003) ..............................................................40

*Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. C.B. Brand*,
  2023 WL 2185899 (S.D.N.Y. 2023) .....................................................................36

*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*,
  720 F.3d 71 (2d Cir. 2013) ..................................................................................30

*Folksamerica Reins. Co. v. Clean Water of New York, Inc.*,
  413 F.3d 307 (2d Cir. 2005) ................................................................................14

*Commercial Union Ins. Co. v. Flagship Marine Servs.*,
  190 F.3d 26 (2d Cir. 1999) ............................................................................ 14, 28

*County of Columbia v. Cont'l Ins. Co.*,
  83 N.Y.2d 618, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994) .......................... 30, 31

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D. N.J. 2004) .....................................................................40

*Cummins, Inc. v. Atl. Mut. Ins. Co.*,
  56 A.D.3d 288, 867 N.Y.S.2d 81 (2008) ..............................................................42

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
  639 F.3d 557 (2d Cir. 2011) ........................................................................... 32, 33

*Fireman's Fund Insurance Company v.*
  *One Beacon Insurance Company*,
  49 F.4th 105 (2d Cir. 2022) .................................................................................15

*Flemming v. Air Sunshine, Inc.*,
311 F.3d 282 (3d Cir. 2002) .................................................................40

*Great Lakes Insurance SE, Petitioner v. Raiders Retreat Realty Co., LLC*,
144 S.Ct. 637 (2024).........................................................................14

*Greenfield v. Philles Records, Inc.*,
98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) ................................32

*Hamdi & Ibrahim Mango Co. v. Reliance Ins. Co.*,
291 F.2d 437 (2d Cir. 1961)........................................................... 23, 39

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004)...............................................................40

*In re September 11 Litigation*,
640 F. Supp. 2d 323 (S.D.N.Y. 2009) ..................................................20

*International Multifoods Corp. v. Commercial Union Ins. Co.*,
309 F.3d 76 (2d Cir. 2002)............................................................... *passim*

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
97 F.3d 632 (2d Cir. 1996)...............................................................15

*Levitt v. Those Certain Underwriters at Lloyd's*,
No. 13248/96, 1999 WL 33116421 (N.Y. Sup.Ct. Aug. 31, 1999)......................37

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir.1997) ................................................................37

*M. Fortunoff Corp. v. Peerless Ins. Co.*,
432 F.3d 127 (2d Cir. 2005) ...............................................................42

*Mahoney v. JJ Weiser and Co., Inc.*,
04 CIV. 2592 (VM)(HBP), 2007 WL3143710 (S.D.N.Y. Oct. 25, 2007) ...........40

*Maleh v. Insurance Co. of North America*,
1952 WL 1178, 1952 A.M.C. 1178 (S.D.N.Y. 1952)................................... 23, 39

*Morgan Stanley Group Inc. v. New England Ins. Co.*,
225 F.3d 270 (2d Cir. 2000) ..................................................... 15, 37, 42

*New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*,
266 F.3d 112 (2d Cir. 2002) ...............................................................15

*Ope Shipping, Ltd. v. Allstate Ins. Co., Inc.*,
    687 F.2d 639 (2d Cir. 1982) cert. denied sub nom.,
    *Underwriters at Lloyds v. Ope Shipping*,
    460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 ........................ 23, 38

*RJE Corp. v. Northville Indus. Corp.*,
    329 F.3d 310 (2d Cir. 2003) ............................................................24

*RSUI Indem. Co. v RCG Group (USA)*,
    890 F. Supp. 2d. 315 (S.D.N.Y. 2012), *aff'd,* 539 Fed. Appx. 3
    (2d Cir. 2013) ..................................................................................27

*Sarinsky's Garage Inc. v. Erie Ins. Co.*,
    691 F. Supp. 2d 483 (2010) ............................................................24

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
    7 F.3d 1091 (2d Cir.1993) ..............................................................24

*Schering Corp. v. Home Ins. Co.*,
    712 F.2d 4 (2d Cir. 1983) ..............................................................42

*Scholastic, Inc. v. Harris*,
    259 F.3d 73 (2d Cir.2001) ..............................................................24

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
    467 F.3d 107 (2d Cir. 2006) ...................................................... 39, 40

*Starr Indemnity & Liability Company v. Brightstar Corp.*,
    388 F. Supp. 3d 304 (S.D.N.Y. 2019) ........................................ 20, 36

*State v. Home Indem. Co.*,
    66 N.Y.2d 669, 495 N.Y.S.2d 969, 486 N.E.2d 827 (1985) ...............32

*Swift Spindrift Ltd. v. Alvada Insurance Inc.*,
    175 F. Supp. 3d 169 (S.D.N.Y. 2016) ........................................ 37, 38

*United States Fire Ins. Co. v. Gen. Reinsurance Corp.*,
    949 F.2d 569 (2d Cir.1991) ............................................................42

*United States Fire Ins. Co. v. Kelman Bottles LLC*,
    2014 U.S. Dist. LEXIS 109982 (W.D. Pa. Aug. 8, 2014) ...................40

*Wards Co., Inc. v. Stamford Ridgeway Associates*,
    761 F.2d 117 (2d Cir. 1985) ............................................................25

*Westchester Fire Ins. Co. v. MCI Commc'ns Corp.*,
    74 A.D.3d 551, 902 N.Y.S.2d 350 (2010)........................................42

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
  348 U.S. 310 (1955)........................................................................14

***Statutes & Other Authorities:***

28 U.S.C. § 1332 ............................................................................5

28 U.S.C. § 1333 .......................................................................4, 14

Graydon S. Starring, Admiralty and Maritime Law: Selected Topics,
  26 Tort & Ins. L.J. 538 (1991) ....................................................38

Fed. R. Civ. P. 9(h) ........................................................................5

Fed. R. Evid. 201 ..........................................................................38

https://www.aimu.org......................................................................38

https://www.aimu.org/formsmenu.html...........................................38

https://www.aimu.org/srcc-background-explanation.html .................39

https://www.marsh.com/us/about/about-marsh.htm .....................35, 43

https://www.marsh.com/us/industries/marine.html ......................35, 43

## *PRELIMINARY STATEMENT*

Plaintiff/Appellant/Cross-Appellee, Navigators Insurance Company (hereinafter, "Navigators"), through undersigned counsel, hereby submits its Brief of Plaintiff/Appellant/Cross-Appellee.

This is an insurance coverage dispute. The underlying action for declaratory judgment and other relief was brought by Navigators against its policyholder, Goyard, Inc. ("Goyard" or "Insured"). Navigators sought a declaration that there is no coverage for Goyard's loss under the policy of ocean marine cargo insurance bearing Policy Number SF20CAR0BG9D301 (hereinafter, the "Policy") issued by Navigators to Goyard, for the incidents of looting and rioting resulting in damage to stock merchandise at Goyard's 20 E 63rd Street, New York, New York retail location ("Goyard NYC") on or about June 1, 2020.

Goyard, a luxury leather goods company with a storefront and corporate office on the Upper East Side of New York City, suffered an overnight break-in and loss of $684,855 in merchandise as a result of civil rioting following George Floyd's death. The next day, June 2, 2020, Goyard filed a claim with its insurer, Navigators. Navigators denied coverage on the grounds that although Endorsement No. 4 of its Policy extends *some* coverage to retail store losses, the Policy does not extend coverage to retail storage losses resulting from riots or civil commotions. The parties both sought declaratory relief in support of their competing interpretations of the

1

insurance contract. Goyard, as the insured, also sought to recover litigation fees and punitive damages.

After completing discovery, the parties filed cross-motions for Summary Judgment. Goyard also filed a motion to strike portions of Navigators' supporting exhibits. Goyard's motion for a declaration of coverage and reimbursement of the loss was granted. Navigators' Motion for Summary Judgment was denied; but Navigators' motion seeking to dismiss Goyard's claim for attorneys' fees, and to dismiss the punitive damages claim, was granted. Goyard's motion to strike was denied as academic.

The Policy generally provides coverage only for Goyard's goods in transit ("transit coverage"), except in limited circumstances, subject to certain insuring terms, conditions, warranties, and exclusions from coverage, including an exclusion for damage or loss resulting from riots and civil commotions. The Policy's Endorsement No. 1 extends the transit coverage on a limited basis only, removing certain exclusions (including for riots and civil commotions) for transit coverage only, but it does not otherwise add coverage for Goyard's retail goods held at storage locations.

The only coverage provided for Goyard's retail goods *not* in transit is contained in the Policy's Endorsement No. 4, providing limited additional coverage for Goyard's goods while held at listed storage locations, including Goyard NYC.

But, this limited coverage afforded under Endorsement No. 4 is still expressly subject to certain exclusions, including specifically the exclusion for riots and civil commotions.

Despite this, the Court incorrectly held that Endorsement No. 4 of the Policy did not exclude coverage for loss, damage or expense caused by or resulting from riots or civil commotions, as it relates to insured inventory stored at Goyard NYC.

Instead, the Court essentially, and incorrectly, ignored applicable Endorsement No. 4 and focused only on subsection (3) of inapplicable Endorsement No. 1, which extends coverage for acts carried out for terroristic purposes, and incorrectly held that because that subsection was expressly conditioned upon the property insured being in the ordinary course of transit, that subsection (1) of Endorsement No. 1, extending coverage for riots and civil commotions ("SR&CC"), not only applies to goods in transit, but also applies to goods located at retail locations, such as Goyard NYC. This ignored that the exclusions in Endorsement No. 4 apply "[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached . . . ." (A-827-828).

The Court then erroneously relied on certain extrinsic evidence submitted by Goyard, but refused to admit into evidence, or otherwise consider, similar extrinsic evidence submitted by Navigators in the form of an insurance expert report, as well

as references to the website of the American Institute of Marine Underwriters ("AIMU"). AIMU is the marine trade association that drafted the form, commonly known as the SR&CC-buy back, for use in the marine insurance industry.

Navigators' marine insurance expert report explained the history of the pertinent clauses in the Policy, the custom and practice in the industry, and the structure of the Policy. The expert's report, as well as AIMU's website states that Subsection (1) and (2) of the "SR&CC -buy-back" form (i.e., Endorsement No. 1) only apply to goods in the ordinary course of transit.

The Court also incorrectly applied the rule of contra proferentem against Navigators even though the Policy was negotiated between sophisticated parties, and incorrectly applied the wrong section of the "Valuation Clause," so that the damage award was increased by ten percent.

On the other hand, the Court correctly held that Goyard's loss was caused by riots and civil commotions in the civil unrest following the death of George Floyd. The Court also correctly held that Goyard is not entitled to its attorneys' fees or punitive damages.

## *JURISDICTIONAL STATEMENT*

Navigators commenced this declaratory judgment action in the District Court pursuant to Admiralty and Maritime Jurisdiction 28 U.S.C. §1333, 28 U.S.C. §1333,

et seq., and Rule 9(h) of the Fed. R. Civ. Proc. Goyard filed a declaratory counterclaim under 28 U.S.C. §1332, et seq.

## *STATEMENT OF ISSUES PRESENTED FOR APPEAL*

1. Whether the District Court erred as a matter of law by not granting Navigators' Motion for Summary Judgment against Goyard.

2. Whether the District Court erred as a matter of law by considering certain extrinsic evidence concerning the insurance contract, and failing to consider Navigators' expert affidavit, and/or the affidavits of Navigators' employees addressing the issue of custom and usage in the industry concerning the wording and application of industry standard clauses found in the Policy.

3. Whether the District Court erred as a matter of law in drawing factual inferences in favor of Goyard and against Navigators by applying the rule of contra proferentem when the insurance contract was negotiated by sophisticated parties: Goyard with its broker, Marsh; and the Insurer, Navigators.

4. Whether the District Court erred as a matter of law by incorrectly applying a ten percent premium in addition to the amount of invoice, as the goods subject to Goyard's claim are "raw materials, supplies in storage, used

goods," which are excluded from the ten percent premium under express terms of the Policy.

## STATEMENT OF THE CASE

### A. Background

On or about June 2, 2020, representatives for Goyard reported that on June 1, 2020, at Goyard NYC, looting and rioting occurred resulting in damage and loss of stock merchandise (A-693, ¶8). Representatives of Goyard submitted the Notice on June 2, 2020, stating, *inter alia*, that Goyard was a victim of looting during the civil riots and suffered damage to its stock located at Goyard NYC (A-693, ¶9 and A-705). The Notice provided as follows: "Please accept this as first notice of loss on 6/1/20 for the referenced insured/policy number. The insured was a victim of looting during civil riots and suffered damage to their stock located at 20 E 63rd Street, New York, NY 10065." (A-705).

On or about June 5, 2020, representatives for Navigators assigned the adjusting firm McLarens to investigate the Notice. (A-694, ¶16). McLarens issued Report #1 dated June 26, 2020 ("McLarens Report #1") concerning its investigation of the Loss (A-694, ¶17 and A-706-769). The McLarens Report #1 stated, in pertinent part, under the caption – CAUSE AND ORIGIN, that on June 1, 2020, at approximately 9:00 PM looters shattered the front entry door glass and broke through the steel rolldown gate (A-694-695, ¶18). Once inside, looters caused

6

extensive damage to high-end furniture, display fixtures and building improvements. (Id.) Additionally, a large volume of stock (mainly women's handbags and accessories) was stolen (Id.).

In a letter dated June 26, 2020, representatives of Navigators issued a reservation of rights letter while Navigators investigated the incident and determined coverage under the Policy (the "Reservation Letter") (A-695, ¶23 and A-770-774). In a letter dated August 17, 2020, representatives of Navigators issued a declination of insurance coverage letter (the "Declination Letter")(A-775-782).

On August 18, 2020, Navigators filed its Complaint for Declaratory Judgment requesting that the Court: 1) determine and adjudicate the rights and liabilities of the parties with respect to the subject policy of insurance, and that such judgment specify and declare that Plaintiff, Navigators Insurance Company, is under no duty or obligation to indemnify Defendant, Goyard, Inc. under the Policy ; 2) declare that the exclusions from coverage in the Policy apply to preclude coverage under the Policy; 3) declare that there is no coverage for Goyard's Loss under the Policy; and 4) award such other and further relief to Navigators, as the Court may deem just and proper. (A-691-704).

**B. *The Navigators Ocean Marine Insurance Policy***

The Policy provides coverage for shipments of Goyard's goods while in transit only, except in limited circumstances, subject to certain insuring terms, conditions, warranties, and exclusions from coverage (A-783-829), including the following:

> MARINE OPEN CARGO POLICY
> Policy Number: SF20CAR0BG9D301 . . . .
> OCEAN MARINE OPEN CARGO POLICY DECLARATIONS . . . .
> INSURING CONDITIONS
> All shipments of "goods insured," unless otherwise specified herein, are insured against all risks of physical loss or damage from any external cause irrespective of percentage, excepting risks excluded by the FC&S (Free of Capture and Seizure) and SR&CC (Strikes, Riots, and Civil Commotions) Warranties or any other exclusion appearing elsewhere in this Policy. . . . .
> LIMITS OF LIABILITY . . . .
> **Transit**  $1,000,000 Vessel, Air, Truck and connecting conveyance
> **Stock**        Goyard NY, LLC  $2,750,000
> ADDITIONAL COVERAGE & TERMS . . . .
> -Storage Coverage – Coverage [at] approved locations listed below . . . .
> (A-783-788)

The Policy's coverage for Goyard's goods while in transit is set forth in the following relevant Policy provisions, which expressly excludes coverage for damage or loss resulting from, among other things, riots and civil commotions:

> MARINE OPEN CARGO POLICY
> Policy Number: SF20CAR0BG9D301 . . . .
> Terms of Coverage . . . .
> 27. Insuring Conditions
> A. All shipments of "goods insured," unless otherwise specified on the attached Policy Declarations, are insured against all risks of physical loss or damage from any external cause irrespective of percentage, excepting risks excluded by the FC&S (Free of Capture and Seizure)

8

and SR&CC (Strikes, Riots, and Civil Commotions) Warranties or any other exclusion appearing elsewhere in this Policy. . . . .(A-797)
Exclusions . . . .(A-803)
Paramount Warranties
The following Warranty(ies) shall be paramount and shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers to the risks excluded by these Warranty(ies) and expressly assumes the said risks: . . . .
**65. SR&CC Warranty (April 3, 1980 87B 109C)**
**NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY, THIS INSURANCE IS WARRANTED FREE FROM LOSS, DAMAGE OR EXPENSE CAUSED BY OR RESULTING FROM:**
**A. strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrences or disorders,**
B. vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional. . . . .
[Emphasis added](A-805)

The Policy contains an Endorsement No. 1 that extends the Policy's transit coverage on a limited basis only, as follows, removing certain exclusions (e.g., riots and civil commotions) for transit coverage only, but does not otherwise add coverage for Goyard's goods held at storage locations:

S.R. & C.C. Endorsement  (Form No. 12A)

THIS INSURANCE ALSO COVERS:

(1)      Physical loss of or damage to property insured directly caused by strikers,  locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions;

(2)      Physical  loss of or damage to the property  insured directly caused by vandalism, sabotage or malicious acts; and,

9

(3)      Physical loss of or damage to the property insured directly caused by the act or acts of one or more persons, . . . .carried out for political, terroristic or ideological purposes. . . .PROVIDED that any claim to be recoverable under this subsection (3) be not excluded by the Free of Capture & Seizure Warranty, … in the Policy to which this endorsement is attached. Notwithstanding the foregoing, coverage under this subsection (3) is conditional upon the property insured being in the ordinary course of transit. . . .

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefor at the rates established by the Assurer from time to time . . . .

Effective with respect to shipments made on or after **As per Declarations . . . .**
(A-819-820)

The only coverage provided for Goyard's retail goods *not* in transit is contained in the Policy's Endorsement No. 4, providing limited coverage for Goyard's goods while held at listed storage locations, after they are no longer in transit, including Goyard NYC, as follows:

**ENDORSEMENT NO. 4**
**STORAGE COVERAGE**
Attached to and forming part of Policy No. SF20CAR0BG9D301
Issued to Goyard Inc.
1. Property Insured
**In consideration of premium as set forth elsewhere herein, this Policy is hereby extended to cover goods insured under the policy to which this endorsement is attached while detained in locations** approved by these Assurers subject to terms and as hereinafter provided.
2. Attachment and Termination
This insurance attaches on all goods described above contained in locations approved by these Assurers on or after As per Declaration Page
. . . .
**3. Perils Insured**

10

**Goods shall be insured under this endorsement subject to the same terms and conditions as applicable during transit, as set forth in the policy to which this endorsement is attached, except as hereinafter excluded or specifically provided for . . . .**
**[Emphasis added](A-826-829)**

Endorsement No. 4 expressly contains paramount exclusions from coverage that apply to goods in storage as follows, including, for example, the exclusion for riots and civil commotions:

**9. Perils Excluded**
**Notwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached, the following perils are excluded from coverage:**
**. . . .**
**(e) Risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached.**
[emphasis added](A-827-828)

## *SUMMARY OF ARGUMENT*

The Court's Decision (Special Appendix ("SPA") 1-7) was rendered in error, as the Navigators Policy is unambiguous, and the Court's Decision has rendered Endorsement No. 4 and the Storage Coverage conveyed thereunder entirely superfluous by essentially ignoring Endorsement No. 4, the only provision that actually applies to goods stored at Goyard NYC, in favor of Endorsement No. 1, which only applies to shipments of goods in transit (something the property at issue no longer was when it was at Goyard NYC). (A-819-820). Goyard NYC is included as a location approved by Navigators in the Insurance Declarations. (A-786-788).

11

The only coverage provided for Goyard's goods at Goyard NYC (goods not in transit) is provided pursuant to the terms, conditions, exclusions, warranties contained in Endorsement No. 4 – STORAGE COVERAGE. (A-826-829).

Endorsement No. 1, commonly referred to as the "SR&CC – Buy Back," extends coverage for SR&CC with respect to the Policy's transit coverage only. This endorsement extends coverage on a limited basis only for goods in transit, not for goods in storage. (A-819-820).

Without Endorsement No. 4, there is no coverage for goods stored at retail locations, such as Goyard NYC. Also importantly, Endorsement No. 4 contains a paramount exclusion from coverage for risks excluded by the SR & CC Warranty contained in the Policy (e.g., for riots or civil commotions). (A-827-828).

Endorsement No. 4 incorporates the exclusion from coverage in the Policy entitled the SR&CC Warranty. (A-827-828). It does not incorporate the limited transit coverage found in the "SR&CC – Buy Back" in Endorsement No. 1.

Under Section "3 Perils Insured" of Endorsement No. 4, "[g]oods [in retail locations] shall be insured under this endorsement subject to the same terms and conditions as applicable during transit, as set forth in the policy to which this endorsement is attached, except as hereinafter excluded . . . ." (A-826). After the "Perils Insured" section of the Endorsement, Endorsement No. 4 expressly states under Section "9. Perils Excluded" that the Exclusions contained Section 9 are to be

applied **"[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached** . . . ,"  including under Subsection 9(e) -  "Risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached". (A-827-828). Accordingly, damage or loss resulting from riots and civil commotions is unambiguously excluded for the limited coverage provided in Endorsement No. 4 for goods in storage, and Endorsement No. 1 is not applicable.

Endorsement No. 1 never adds coverage for retail goods held in storage, but even if it did, Subsection 9(e) of Endorsement No. 4 would otherwise take precedence over all other terms, conditions and exclusions from coverage in the Policy, including the provisions contained in Endorsement No. 1, and would further exclude any such alleged coverage.

The Court further improperly considered certain extrinsic evidence against Navigators, but did not consider similar evidence in favor of Navigators, as well applying the rule of contra proferentem against Navigators even though the Policy was negotiated between sophisticated parties.  The Court further also applied the wrong section of the "Valuation Clause," so that the damage award was increased by ten percent. (SPA-1-7).

On the other hand, the Court correctly held that Goyard's loss was caused by riots and civil commotions in the civil unrest following the death of George Floyd.

The Court also correctly held that Goyard is not entitled to its attorneys' fees or punitive damages. (SPA-1-7).

## APPLICABLE LAW

Navigators commenced an action for declaratory judgment asserting Admiralty and Maritime Jurisdiction under 28 U.S.C. § 1333. Where federal maritime law is firmly entrenched, it applies to this marine insurance contract. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955). Otherwise, if there is no established federal maritime law, New York law applies to the construction of the insurance contract. See *Folksamerica Reins. Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 312 (2d Cir. 2005); *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 30 (2d Cir. 1999).

The Policy contains a choice-of-law provision stating that federal maritime law applies, and in the absence of federal maritime law, the law of New York applies. As a matter of federal maritime law, choice-of-law provisions in marine insurance contracts are presumptively enforceable. *Great Lakes Insurance SE, Petitioner v. Raiders Retreat Realty Co., LLC*, 144 S.Ct. 637 (2024).

## STANDARD OF REVIEW

The Court of Appeals reviews *de novo* the district court's grant of a motion for summary judgment, with no deference given to the lower court's reasoning or holding. Summary judgment should be granted if "there is no genuine dispute as to

any material fact and the movant is entitled to a judgment as a matter of law." The same standard is applied where the parties file cross-motions for summary judgment and the district court grants one motion, but denies the other. *Fireman's Fund Insurance Company v. One Beacon Insurance Company*, 49 F.4th 105 (2d Cir. 2022); *New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir. 2002). It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss. *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000).

## ARGUMENT

### I.

### The District Court Erred as a Matter of Law by Not Granting Navigators' Motion for Summary Judgment against Goyard

Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996).

The Policy unambiguously excluded coverage for Riots and Civil Commotions with respect to goods in storage at Goyard NYC. The pertinent insuring terms, conditions, warranties, and exclusions from coverage of the Policy exclude coverage for riots and civil commotions with respect to goods stored at retail

locations, and the "buy-back" of otherwise excluded coverage for shipments in transit only does not apply. (A-783-829, A-826-829).

Again, until Endorsement No. 4, the very last substantive provision of the Policy, is considered, the Policy provides coverage for shipment of Goyard's goods in transit only, except in limited circumstances, subject to certain insuring terms, conditions, warranties, and exclusions from coverage, including an exclusion for damage or loss resulting from riots or civil commotions. The Policy's Endorsement No. 1 extends the transit coverage on a limited basis only, removing certain exclusions (e.g., riots or civil commotions) for transit coverage only, but does not otherwise add coverage for Goyard's retail goods held at storage locations. (A-819-820). The only coverage provided for Goyard's retail goods *not* in transit is contained in the Policy's Endorsement No. 4, providing limited coverage for Goyard's retail goods while held at listed storage locations, including Goyard NYC. (A-826-829). But, this limited coverage is still expressly subject to certain exclusions, including as relevant here, the exclusion for riots and civil commotions. (A-827-828).

Goyard NYC was included as a location approved by Navigators. Coverage for goods stored at scheduled locations is only provided pursuant to Endorsement No. 4 – STORAGE COVERAGE (A-8826-829). Under Section "3 Perils Insured" of Endorsement No. 4, "[g]oods [in retail locations] shall be insured under this

endorsement subject to the same terms and conditions as applicable during transit, as set forth in the policy to which this endorsement is attached, except as hereinafter excluded . . . ." (A-826). After the "Perils Insured" section of the Endorsement, Endorsement No. 4 expressly states under Section "9. Perils Excluded" that the Exclusions contained in Section 9 are to be applied "**[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached** . . . ," including under Subsection 9(e) - "Risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached". (A-827-828).

Thus, Endorsement No. 4 contains a paramount exclusion from coverage for risks excluded by the SR & CC Warranty contained in the Navigators open policy. (A-827-828).

In *International Multifoods Corp. v. Commercial Union Ins. Co*., 309 F.3d 76,91-92 (2d Cir. 2002), the Court interpreted a marine cargo policy and stated:

> [T]he IINA [Insurance Company of North American] Policy contains an FC & S warranty that all parties agree by its terms clearly applies to the seizure in question: "Notwithstanding anything herein contained to the contrary this insurance is warranted free from … capture, seizure, arrest, restraint … and the consequences thereof … whether in time of peace or war and whether lawful or otherwise."
> . . . .
> **Because the FC & S clause begins with the phrase "[n]otwithstanding anything herein contained to the contrary,"** we hold that the District Court [Honorable Alvin K. Hellerstein] properly granted summary judgment to IINA. **Such language means**

**that the FC & S clause trumps any other provisions of the IINA Policy.**

. . .

**[B]ecause the FC & S clause alone among the relevant provisions applies notwithstanding anything else in the contract, we need not resolve the ambiguities surrounding the purpose of the language of Section 13(a).** The FC & S clause by its terms overrides any inconsistent language elsewhere in the IINA Policy. **Because the FC & S clause by its terms plainly excludes coverage for the seizure of Multifoods' cargo, and because it trumps all other relevant provisions of the IINA Policy, we affirm the grant of summary judgment to IINA.** [emphasis added]

Exclusion 9(e) in Endorsement No. 4 unambiguously states that there is an exclusion from coverage for risks excluded by the SR & CC Warranty in the open policy to which this coverage is attached. (827-828)  It states, in pertinent part, as follows:

> 9. Perils Excluded
> Notwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached, the following perils are excluded from coverage:
> . . . .
> (e) Risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached. [emphasis added]  (A-826-829, A-827-828).

The SR & CC Warranty appears in Clause 65 of the open policy to which Endorsement 4 is attached. It states, in pertinent part, as follows:

> 65. SR&CC Warranty (April 3, 1980 87B 109C)
> NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY, THIS INSURANCE IS WARRANTED FREE FROM LOSS, DAMAGE OR EXPENSE CAUSED BY OR RESULTING FROM:

A. strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrences or disorders,

B. vandalism, sabotage or malicious act . . . carried out for political, terroristic or ideological purposes . . . .

(A-783-829, A-805).

Endorsement No. 4 is an integral part of the Policy, as the Endorsement states that "this Policy is hereby extended to cover goods insured under the policy to which this endorsement is attached while detained in locations approved by these Assurers subject to terms and as hereinafter provided." (A-830). It further states that the Endorsement No. 4 "insurance attaches on all goods described above contained in locations approved by these Assurers on or after As per Declaration Page," which includes the Goyard NYC location. (A-826-829, A-786-788). Contrast this with the Endorsement No. 1 insurance that only attaches to goods in transit, specifically "[e]ffective with respect to shipments made on or after" the date set forth in the Declarations for which "[t]he Assured agrees to report all shipments . . ." to Navigators. (A-819-820).

The SR & CC Warranty, commonly known as the Strikes, Riots and Civil Commotion Warranty, and the F.C. & S Warranty have been interpreted by the courts as exclusions from coverage. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002). The SR & CC Warranty Exclusion in the open policy was unambiguously incorporated into the terms, conditions and exclusions of Endorsement No. 4. Documents may be incorporated into insurance

19

policies by explicit reference or by annexation or attachment to the policy. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, n.6 (2d Cir. 2002); *Starr Indemnity & Liability Company v. Brightstar Corp.*, 388 F.Supp.3d 304 (S.D.N.Y. 2019). By explicit reference, Endorsement No. 4 unambiguously excludes coverage under the SR & CC Warranty for goods located at the Goyard NYC retail location.

Consequently, the Policy unambiguously excludes coverage for SR&CC for goods held at the Goyard NYC location. Where a contract is straightforward and unambiguous, such as the Policy, its interpretation presents a question of law for the court, to be made without resort to extrinsic evidence. *In re September 11 Litigation*, 640 F.Supp.2d 323 (S.D.N.Y. 2009) affirmed in part, vacated in part, remanded by *Aegis Ins. Services, Inc. v. The Port Authority of New York and New Jersey*, 737 F.3d 166 (2d Cir. 2013).

In Judge Hellerstein's Order, in the Section entitled "THE 2020 POLICY," the Court expressly found that the "Goyard NY's 63' Street" location was the "site of the riotous thefts." (SPA – 2-3). Thereafter, the Court based its legal conclusion (that the SR&CC "buy back" in Endorsement No.1, subsection (1) provided insurance coverage) on the finding that "Goyard's claim arose out of a riot or civil commotion." (SPA- 4). The Court also based its conclusion that "Endorsement No.

1 "buys back" losses caused by riots," on the finding that the claimed losses were caused by riots. (Id.)

But, Endorsement No. 1 buys back coverage for riots and civil commotions for shipments of Goyard's goods in transit only, not for retail goods in storage. That said, the Court correctly and conclusively held that loss or damage to the retail goods stored at Goyard NYC was caused by the New York City Riots. Therefore, Goyard's claim—since it is for retail goods in storage, not goods in transit—is unambiguously excluded from coverage under the SR & CC Warranty exclusion for riots and civil commotions, and the Court erred by not granting Navigators' Motion for Summary Judgment.

**A. The District Court Erred as a Matter of Law In Not Granting Navigators Summary Judgment by Interpreting Endorsement No. 4 of the Policy to Incorporate Language Not Contained within the SR & CC Warranty and by Refusing to Interpret Exclusion 9 (E) in Endorsement No. 4 as Incorporating Only the SR & CC Warranty (Clause 65) in the Policy.**

The Court's Order declared that when the insurance contract is read in its entirety, giving effect to all of its terms, Endorsement No. 1 of the Policy provides coverage for goods damaged at Goyard NYC as a result of riots. (SPA-1-7). The Court states that "there is **no hint of an intention** that, by adding the coverage of Endorsement No. 4, it would eliminate the coverage of Endorsement No. 1." [emphasis added] (SPA- 4-5). Contrary to the Court's statement, there is certainly **far more than a hint of an intention** to eliminate the coverage of Endorsement No.

1, to the extent Endorsement No. 1 provides coverage for Goyard's retail goods in storage, which as already set forth herein, it does not.

Significantly, the unambiguous language of Endorsement No. 4 expressly states that riots and civil commotions are excluded from coverage for goods stored at retail locations as a matter of law. The additional coverage provided in Endorsement No. 1 does not govern the scope of coverage afforded by the Policy for goods at retail locations.

First, Endorsement No. 1 expressly attaches to and forms part of the Policy which provides insurance coverage for goods in the ordinary course of transit, subject to its insuring terms conditions and exclusions from coverage. The Policy does not provide coverage for goods stored in retail locations, such as the Goyard NYC location, without the addition of Endorsement No. 4.

Second, Endorsement No. 4, in a list of Exclusions, expressly incorporates the SR&CC Warranty exclusion in the open policy. It does not incorporate the limited coverage terms found in Endorsement No. 1.

Third, Endorsement No. 4 expressly provides coverage for retail locations, such as Goyard NYC. However, Endorsement No. 4 also expressly states that the SR&CC warranty exclusion applies "[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached . . . ." (A-826 and A-827-828). Therefore, the

22

exclusions in Endorsement No. 4 control, in spite of anything written or printed in Endorsement No. 1, and in spite of any allegation that the wording of Endorsement No. 1 may contain ambiguous language.

The Policy is a standard open cargo policy containing an SR&CC Warranty that has been in use for decades. *Ope Shipping, Ltd. v. Allstate Ins. Co., Inc.*, 687 F.2d 639 (2d Cir. 1982) *cert. denied sub nom.*, *Underwriters at Lloyds v. Ope Shipping*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946; *Maleh v. Insurance Co. of North America*, 1952 WL 1178, 1952 A.M.C. 1178 (S.D.N.Y. 1952)(addressing a 1939 marine open cargo policy); *Hamdi & Ibrahim Mango Co. v. Reliance Ins. Co.*, 291 F.2d 437 (2d Cir. 1961)(considering a 1941 S.R. & C.C. endorsement to a marine open cargo policy).

Endorsement No. 4 in the Policy provided insurance coverage for the retail locations, including Goyard NYC. It contained its own clear and express exclusions from coverage and specifically referenced and incorporated the SR&CC Warranty Exclusion in the Policy. The SR&CC Warranty appeared in full text in the Policy to which Endorsement No. 4 was attached. As such, there are no ambiguous terms in these clauses and the clauses excluding coverage for SR&CC were expressly stated.

**B. The District Court Erred as a Matter of Law In Not Granting Navigators Summary Judgment by Interpreting the Insurance Contract so as to Render the Coverage Provisions of Endorsement No. 4, and the Exclusions from Coverage therein, as Meaningless and Superfluous.**

The Court's Order stating that Endorsement No. 1 should be read to provide SR&CC for goods at Goyard NYC disregards well-settled law by rendering the language found in 9(E) of Endorsement No. 4 superfluous. Endorsement No. 4 unambiguously states the exclusions from coverage listed in the Endorsement control "[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached . . . ." (A-827-828).

It is well settled that Courts disfavor contract interpretations that render provisions of a contract superfluous. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002); *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir.2001) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094–95 (2d Cir.1993)) ("In determining whether a contract is ambiguous, a court must look at 'the entire integrated agreement,' to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'"); *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (In assessing ambiguity, courts must "consider the entire contract to safeguard against adopting an interpretation that would render any individual provision superfluous."); *Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F.Supp.2d 483

(2010)(A court cannot consider an interpretation that ignores a key policy provision to be reasonable.

The Court incorrectly held that when Endorsement No. 4 expressly incorporated the SR&CC Warranty Exclusion in the open policy, it somehow also nonsensically incorporated the elimination of that Exclusion in Endorsement No. 1 despite the also-expressly-stated intention not to do so ("[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached . . .") (A-827-828). This holding renders the paramount exclusion in Endorsement No. 4, excluding SR&CC coverage for goods stored at retail locations, meaningless, and therefore the holding is contrary to law. In any event, Endorsement No. 1 does not otherwise provide any coverage for retail goods in storage to exclude, as set forth above.

## C. The District Court Erred as a Matter of Law by Granting, in part, Goyard's Motion for Summary Judgment against Navigators

In *Wards Co., Inc. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir. 1985), the Court of Appeals stated:

> A Court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Contorted semanticism must not be permitted to create an issue where none exists. Yet, where the text of an agreement reasonably allows for varying interpretations—whether by the inadvertence or design of the draftsman—the need for judicial construction cannot, and may not, be avoided.

Herein, the Court's Order stated the following:

> The insurance contract has three clauses covering loss of property because of a riot: the Warranties clause that excludes coverage unless added by an endorsement; Endorsement No. 1 that adds such coverage; and Endorsement No, 4 that excludes risks excluded by the Warranties clause, Navigators argues that Goyard's loss caused by the riot of June 1, 2020 is not covered, because Endorsement No. 4 excludes SR&CC perils by referring back to the Warranties clause. The Warranties Clause, however, does not entirely preclude SR&CC perils; it excludes them, only to the extent an Endorsement does not bring them back, and Endorsement No. 1 brings back losses caused by riots. There is no basis to read Endorsement No. 4 so that it cancels Endorsement No. 1. (SPA-4).

Contrary to the Court's assertion that "there is no basis to read Endorsement No. 4 so that it cancels Endorsement No. 1" (SPA-4), actually, there is no basis to read that the express Paramount Exclusions from coverage in Endorsement No. 4 incorporate extended coverage provisions contained in Endorsement No. 1.

The Policy contains paramount warranties that exclude coverage: 1) for "Capture and Seizure," known as the Free of Capture and Seizure Clause ("FC&S") and 2) for "Strikes, Riots and Civil Commotions", known as Strikes Riots and Civil Commotions Clause ("SR&CC")(A-805). Endorsement No. 1 to the Policy is commonly referred to as the "SR&CC Buy-Back" Clause, as it adds back limited coverage for goods in the ordinary course of transit. (A-819-820). Endorsement No. 4 provides coverage for goods in storage, including goods in retail locations such as Goyard NYC, subject to paramount exclusions. (A-826-829). These are two distinct and separate coverages for two different types of risks, and the intent manifested by

insuring these different risks under two distinct Endorsements must be given effect as a matter of law.

Endorsement No. 4, in a list of Exclusions, incorporates only the SR&CC Warranty Exclusion in the Policy. (A-827-828). It does not incorporate the extended coverage terms found in Endorsement No. 1. The list of Exclusions contained in Endorsement No. 4 are paramount and control notwithstanding any other terms, conditions or exclusions in the Policy, including Endorsement No. 1. (A-827-828).

A review of the Court's interpretation of the Policy reveals that the Court simply adopted Goyard's contorted interpretation of the Policy as asserted in its Motion for Summary Judgment. However, the plain language in a policy exclusion is enforceable as a matter of law, and the Court erroneously failed to do so in this case. *RSUI Indem. Co. v RCG Group (USA)*, 890 F. Supp. 2d. 315 (S.D.N.Y. 2012), *aff'd,* 539 Fed. Appx. 3 (2d Cir. 2013).

Counsel for Goyard argued that Endorsement No. 1, by reinstating coverage for certain risks otherwise excluded by the SR &CC Warranty while goods are in the ordinary course of transit, somehow provides coverage for the goods located at retail locations. (A-819-820). Significantly, Goyard cites no authority interpreting Endorsement No. 1 in the manner it proposes. Goyard identifies no criteria to determine that Endorsement No. 1 provides coverage for the goods located at the Goyard NYC location, and most importantly, there is no basis for this in the Policy.

27

The argument that "ordinary course of transit" is not expressly referenced in subsections 1 and 2 of Endorsement No. 1 in no way creates coverage. *Cf. Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 33 (2d Cir. 1999) ("[T]he absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage). And moreover, two of the final three paragraphs of Endorsement No. 1, applicable to the entire Endorsement, including subsections 1 and 2, establish that Endorsement No. 1 only applies to shipments (i.e., goods in transit). (A-819-820). Endorsement No. 1 expressly attaches to and forms part of the Policy, which provides insurance coverage for goods in transit, and does not provide coverage for goods stored in retail locations, which are not covered under the Policy at all without the addition of Endorsement No. 4.

Endorsement No. 4 expressly provides coverage for retail locations, and also expressly states that the SR&CC Warranty applies "[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the policy to which this endorsement is attached . . . ." (A-827-828). Therefore, the exclusions in Endorsement No. 4, particularly the SR&CC Warranty that is specifically referenced, apply in spite of anything written or printed in Endorsement No. 1, and in spite of any allegation that Endorsement No. 1 may be ambiguous. See *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 91-92 (2d

Cir. 2002) ("[B]ecause the FC & S clause alone among the relevant provisions applies notwithstanding anything else in the contract, we need not resolve the ambiguities surrounding the purpose of the language of Section 13(a)").

As no ambiguity exists in the language of the Policy, it must be interpreted as written; and all the provisions therein must be read in their entirety in order to give the Policy its full meaning and effect. Upon such a reading, the only conclusion that can be reached is that the Policy unambiguously excludes coverage for riots or civil commotion for goods held at the Goyard NYC location.

**D. The District Court Erred as a Matter of Law by Determining that Navigators Does Not Dispute that the SR & CC Endorsement, Endorsement No. 1, Takes Precedence over the SR&CC Warranty within the Policy with Respect to Goods Stored at Retail Locations Covered by Endorsement No. 4.**

In the Court's Order, the Court stated that "Navigators does not dispute that the SR&CC, Endorsement No. 1, takes precedence over the SR&CC warranty." (SPA-3). Contrary to the Court's statement, Navigators only does not dispute that Endorsement No. 1 cancels the SR&CC warranty for shipments of goods in transit. Navigators vigorously denied, and continues to deny, that Endorsement No. 1 takes precedence over the paramount Exclusions contained in Endorsement No. 4 for goods at retail locations that control "[n]otwithstanding anything written or printed above or elsewhere herein, and in addition to the perils excluded in the open policy to which this endorsement is attached . . . ." (A-827-828).

29

The "SR&CC Buy Back" in Endorsement No. 1 broadens the coverage, in limited circumstances only, that is otherwise excluded in the SR&CC Warranty Exclusion in the Policy. The "SR&CC Buy-Back" only provides coverage for goods insured under the main Policy form and consequently, only provides extended coverage for goods damaged in transit.

While asserting that Endorsement No. 1 takes precedence over the SR&CC Warranty Exclusion in the Policy, the Court cites the rationale of the Court of Appeals in *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71,84 (2d Cir. 2013) ("the endorsement unambiguously altered the original Policy, which therefore no longer governs the scope of [the insured's coverage"]. The complete rationale of the Court of Appeals follows:

> [I]t is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect **except as altered by the words of the endorsement.**" *County of Columbia v. Cont'l Ins. Co.*, 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994). **Here, the endorsement unambiguously altered the original Policy, which therefore no longer governs the scope of CGS's coverage.** [emphasis added] *Id*.

Endorsement No. 4 also unambiguously altered the words of the Policy by adding coverage for retail goods in storage that otherwise would not exist. As already set forth herein, the original transit coverage issued by Navigators is not in effect with respect to goods located at retail locations, and damaged or lost as a result of riots or civil commotions. Endorsement No. 4 unambiguously altered the words of

the Policy to add it, and Endorsement No. 1 does not govern the scope of coverage afforded by the Policy for goods at retail locations. Rather, Endorsement No. 4 provides coverage for goods at retail locations, but excludes coverage for goods damaged or lost at retail locations as a result of riots or civil commotions.

The Court erred by basing its decision in the incorrect premise that "Navigators does not dispute that the SR&CC, Endorsement No. 1, takes precedence over the SR&CC warranty." To the contrary, the crux of Navigators' position is that the elimination of the exclusion by Endorsement No. 1 only for shipments of goods in transit has no effect on the express intent for the exclusion to apply to retail goods in storage under Endorsement No. 4.

## II.

**The District Court Erred as a Matter of Law by Considering Certain Extrinsic Evidence with respect to the Insurance Contact, and Failing to Consider Navigators' Expert Affidavit, and/or the Affidavits of Navigators' Employees Addressing the Issue of Custom and Practice in the Industry Concerning the Wording and Application of Industry Standard Clauses Found in the Policy**

The Court, in its Order, stated that "[t]his a contract dispute, not a factual dispute." (SPA-3). The Court explained that when parties dispute the terms of an insurance contract, the court is to "give effect to the intent of the parties as expressed in the clear language of the contract." (Id.) The Court then concluded that "[s]ummary judgment is proper if the language is "wholly unambiguous." (Id.) Under these standards, as Navigators has established above, the Court below should

have granted summary judgment to Navigators as a matter of law, and this Court should correct that error on its *de novo* review.

A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002). Doing so should result in summary judgment in favor of Navigators.

"If, however, the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *State v. Home Indem. Co.*, 66 N.Y.2d 669, 495 N.Y.S.2d 969, 486 N.E.2d 827, 829 (1985); see also *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011). Consequently, resolution of an ambiguous insurance contract is for the trier of fact. Inexplicably, the Court decided to delve into extrinsic evidence, and then apparently and improperly assumed the role of the trier of fact. And it further improperly relied only on extrinsic evidence offered by Goyard, while ignoring evidence offered by Navigators. Again, review of extrinsic evidence is not necessary in this matter where Navigators is entitled to summary judgment under the unambiguous terms of the Policy and Endorsement No. 4, but if it is to be considered, then all relevant evidence should be considered, not just Goyard's.

The Court stated that "there is no hint of an intention that, by adding the coverage of Endorsement No. 4, it would eliminate the coverage of Endorsement No. 1." (SPA-4-5). The Court then commented that "Lingering ambiguities, if any, are to be read against the insurer." (Id.) However, the Court fails to explain what the lingering ambiguities are, and fails to explain why it "picks and chooses" certain testimony from the Goyard's insurance broker and expressly ignores testimony from Navigators' insurance expert and the custom and practice in the marine insurance industry concerning the standard clauses found in the Policy.

Once the Judge opens the door by considering extrinsic evidence from Goyard's insurance broker on the issue of what the broker intended to obtain for insurance coverage, the Court must also consider the evidence submitted Navigators. Navigators submitted evidence concerning the negotiation of the insurance contract, concerning the meaning of standard marine insurance clauses, and concerning entrenched custom and practice in the marine insurance industry. The Court refused to consider the extrinsic evidence submitted by Navigators.

The Court stated that "Navigators presented no testimony nor documentary evidence that either party manifested an intent to exclude retail goods coverage from the SR&CC coverage expressed in Endorsement No. 1." (SPA-5). This statement "flies in the face" of the unambiguous and paramount exclusion from coverage for goods insured at retail locations contained in Endorsement No. 4.

The District Judge declined to consider Navigators' expert report (that was struck in its entirety) and the declarations of Navigators' employees. The Court refused to consider these reports and declarations in spite of the fact that they relate to evidence of custom and practice in the industry.

However, the Court did consider extrinsic evidence submitted by Goyard. In the "Extrinsic Evidence" section of the Court's Order, Judge Hellerstein emphasized that Goyard's insurance broker requested that an exclusion for retail locations be removed from the proposed insurance contract and that the contract provide broad stock throughput coverage for retail locations. (SPA-5). However, the Court refused to consider the evidence presented by Navigators that the Navigators' underwriter agreed to provide insurance for retail locations, but only with a paramount exclusion of coverage for Riots and Civil Commotions.

The deposition testimony of Jessica Bratz, the insurance broker at Marsh & McLennan Agency ("MMA") who negotiated the terms and conditions of the Navigators insurance contract, is replete with extrinsic evidence verifying that the broker and the underwriter were fully aware of, and agreed to, the exclusion from coverage for Riots and Civil Commotions with respect to goods stored at retail locations. In response to the broker's request for insurance coverage, the Navigators' underwriter, Karla Scott issued several quotes and a binder to Bratz during the negotiation process. Each and every written document expressly stated that the

coverage for retail locations included an exclusion from coverage for SR&CC. (A-1556-1557: Bratz Dep. Pgs. 35-39)(A-1989-1991: Original Quote);(A-1981-1983: Amended Quote); (A-1563-1564: Bratz Dep. Pgs. 65-69)(A-2034-2036: Updated Binder); (A-1566-1567: Bratz Dep. Pgs. 75-81)(A-783-829: Policy). Thereafter, Navigators issued MARINE OPEN CARGO POLICY, Policy Number: SF20CAR0BG9D301 and it contained the same paramount exclusion from coverage for goods stored at retail locations. (A-783-829).

Thus, the extrinsic evidence concerning the negotiation of the Policy actually and completely confirms that the broker (Bratz) and the underwriter (Scott) knew and accepted the fact that the Policy excluded coverage for Riots and Civil Commotions for goods stored at retail locations.

Goyard's broker, during the placement and negotiation of the Policy, as well as through the claims process, was employed at MMA. MMA is a worldwide sophisticated broker with a long history of expertise and knowledge. The MMA website states that MMA has offices in over 130 countries; has been in operation since 1871, and has over 100 years of marine expertise. *https://www.marsh.com/us/about/about-marsh.html;*

*https://www.marsh.com/us/industries/marine.html.*

The insurance broker, Jessica Bratz of MMA and the Navigators underwriter, Karla Scott, negotiated the issuance of the Policy. Both Jessica Bratz and Karla Scott

were knowledgeable and experienced in negotiating ocean marine cargo policies. (A- 920-921: Scott Dep., Pg. 7: 21-23; Pg. 10: 16-25); (A-1569: Bratz Dep., Pg. 87: 14-20).

Ms. Bratz requested insurance coverage for Goyard's products for transit from France to the United States and for insurance coverage at certain Goyard retail locations. Ms. Scott delivered a Quotation to Ms. Bratz (A-1555: Bratz Dep., 31:8-21). Ms. Bratz noticed that retail locations were excluded from coverage and requested coverage. (A-938: Scott Dep., Pg. 80: 19-25). Ms. Scott acknowledged that Navigators' standard open cargo policy excludes coverage for retail locations. (A-927: Scott Dep., Pg. 37: 4-18). Ms. Scott agreed to remove the exclusion for retail locations in the policy to be issued to Goyard. (A- 938: Scott Dep., Pg. 81: 9-11). Ms. Bratz never requested that the exclusion for SR&CC be removed from the Policy for goods in the retail location insured under Endorsement No. 4. Thus, the Policy is a standard marine open cargo policy containing an SR&CC Warranty and a SR&CC limited "buy back" that has been in use for decades.

Further, despite considering extrinsic evidence offered by Goyard, the Court refused to consider evidence offered by Navigators as to custom and usage. Custom and usage is among "several types of extrinsic evidence" that, in appropriate circumstances, properly is considered in resolving ambiguity. *Cerveceria Modelo de Mexico, S. de R.L. de C.V. v. C.B. Brand*, 2023 WL 2185899 (S.D.N.Y. 2023); *Starr*

*Indemnity & Liability Company v. Brightstar Corp.,* 388 F.Supp.3d 304 (S.D.N.Y. 2019).

An ambiguity exists in an insurance contract only where the terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business. *Morgan Stanley*, 225 F.3d 270 at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997).

When assessing whether an ambiguity exists in a marine insurance contract, a court must "consider ... custom and usage evidence." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87, n. 4 (2d Cir. 2002). New York courts interpret marine insurance policies "according to the custom and usage of the maritime industry so as to provide a uniformity of case law, since harmonious decisions in this field are deemed highly desirable." *Levitt v. Those Certain Underwriters at Lloyd's*, No. 13248/96, 1999 WL 33116421 (N.Y. Sup.Ct. Aug. 31, 1999); *Antilles S.S. Co., Ltd. v. Members of American Hull Ins. Syndicate*, 733 F.2d 195 (2d. Cir. 1984);  S*wift Spindrift Ltd. v. Alvada Insurance Inc.*, 175 F.Supp.3d 169 (S.D.N.Y. 2016).

Throughout its enduring history, marine insurance has been unregulated insurance. As a result, marine open cargo policies are governed by standard policy

provisions, endorsements and clauses published by AIMU. See https://www.aimu.org. One of the services the AIMU provides for its members is the publishing of information for use by underwriters, loss control, claims specialists, and other interested parties. See https://www.aimu.org. AIMU reproduces and/or publishes a list of forms commonly and historically used in the marine insurance industry. https://www.aimu.org/formsmenu.html.

In published decisions, courts and commentators have relied on AIMU and its website of forms while analyzing insurance coverage disputes. Graydon S. Starring, Admiralty and Maritime Law: Selected Topics, 26 Tort & Ins. L.J. 538, 541 (1991); see *Swift Spindrift Ltd. v. Alvada Insurance Inc.*, 175 F.Supp.3d 169 (S.D.N.Y. 2016). Moreover, as the facts stated below are of a historical nature, a court may take judicial notice under Fed. R. Evid. 201; see *Ope Shipping, Ltd. v. Allstate Ins. Co., Inc.*, 687 F.2d 639 (2d Cir. 1982).

The AIMU website states that the Strikes, Riots and Civil Commotions Warranty (S.R. & C.C. Warranty or SR&CC Warranty) is a common exclusion from coverage found in marine open cargo policies at least since 1949. See *https://www.aimu.org/formsmenu.html.* The S.R. & C.C. Warranty has been mentioned in court decisions going back for many decades. *Ope Shipping, Ltd. v. Allstate Ins. Co., Inc.*, 687 F.2d 639 (2d Cir.1982) cert. denied sub nom., *Underwriters at Lloyds v. Ope Shipping*, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d

946; *Maleh v. Insurance Co. of North America*, 1952 WL 1178, 1952 A.M.C. 1178 (S.D.N.Y. 1952)(addressing a 1939 marine open cargo policy); *Hamdi & Ibrahim Mango Co. v. Reliance Ins. Co.*, 291 F.2d 437 (2d. Cir. 1961)(considering a 1941 S.R. & C.C. endorsement to a marine open cargo policy).

AIMU's S.R. & C.C. limited "buy back" Endorsement Form 12A was contained in the Policy as Endorsement No. 1. The AIMU S.R. & C.C. Forms 12 and 12A, and the predecessors, Forms 11 and 11A, are intended to insure goods in the ordinary course of transit, but no longer than 60 days after completion of discharge from a vessel, or 30 days after completion of discharge from an aircraft. *https://www.aimu.org/srcc-background-explanation.html*.

The Magistrate Judge struck the Expert Report of Robert V. Comegys (the "Opinion")(A-145-153) and denied reconsideration of his opinion. (A-208-217). Consequently, Judge Hellerstein refused to consider the opinion of Navigators' insurance coverage expert on the issues of custom and practice in the marine insurance industry.

The Magistrate overlooked decisions within the Second Circuit that have allowed and relied upon "insurance experts" to testify and opine on whether certain policy provisions apply under a given set of circumstances. In *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 113 (2d Cir. 2006), the Second Circuit examined the admissibility of testimony from an insurance expert concerning the

meaning of a "per occurrence" provision in relation to the September 11th attacks on the World Trade Center. The Second Circuit ruled that the expert's testimony was admissible to support the opinion because of his years of experience and familiarity with practices in the industry. *Id*.; see also *Mahoney v. JJ Weiser and Co., Inc.*, 04 CIV. 2592 (VM)(HBP), 2007 WL 3143710 (S.D.N.Y. Oct. 25, 2007).

While the Magistrate Judge's Opinion striking the Comegys Report seemingly rests upon the premise that "interpretation of an insurance agreement is a question of law" for its holding, courts across the country have nevertheless consistently permitted experts to testify about the customary meaning of insurance policy provisions and customs in the insurance industry based on their experience. See, e.g., *SR Int'l Bus. Ins. Co.*, 467 F.3d at 132–37; *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004); *Flemming v. Air Sunshine, Inc.*, 311 F.3d 282, 297, n.10 (3d Cir. 2002); *United States Fire Ins. Co. v. Kelman Bottles LLC*, 2014 U.S. Dist. LEXIS 109982, *21–22 (W.D. Pa. Aug. 8, 2014); *Crowley v. Chait*, 322 F. Supp. 2d 530, 538–39 (D. N.J. 2004); *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 677 (W.D. Mich. 2003).

In *Binghamton-Johnson City Joint Sewage Bd. v. Am. Alternative Ins. Corp.*, 2015 WL 5023650 (N.D.N.Y. Aug. 25, 2018), the Court found that the insurance expert was permitted to testify within the bounds of his expertise in order to assist the jury in

(a) understanding the general standard practices and customs of the insurance business (based on his training and experience), (b) understanding how this particular policy is structured and how its provisions relate to each other (again based on his training and experience), and (c) understanding what, if any, ambiguous terms in the policy are typically understood to mean in other insurance policies (again based on his training and experience).

*Binghamton-Johnson*, 2015 WL 5023650 at 5.

The Comegys Report contains numerous factual assertions and conclusions founded primarily upon his extensive experience in the marine insurance market (specifically cargo insurance) and twenty-eight years as an Ocean Cargo Insurance Manager. Relying on his experience and knowledge in the marine insurance industry, Comegys opines on how the policy language and endorsements relate to each other within standard United States cargo insurance contracts, which is squarely within the bounds the Court permitted in *Binghamton-Johnson*. (A-145-153).

Mr. Comegys' report explains the standard practice in the cargo insurance market concerning the meaning of the SR&CC limited buy-back in Endorsement No. 1 and that it applies only to goods while the goods are in the due course of transit. He also addresses the customary meaning of the critical phrase contained in Endorsement No. 4, stating that the Exclusion for SR&CC controls "[n]otwithstanding anything written or printed above or elsewhere herein. . . ." (A-145-153).

## III.

**The District Court Erred as a Matter of Law in Drawing Factual Inferences in favor of Goyard and against Navigators by Applying the Rule of Contra Proferentem when the Insurance was Negotiated by Sophisticated Parties: Goyard with its broker, Marsh; and the Insurer, Navigators**

While the District Court's Order did not expressly use the term contra proferentem, the Court stated that "Lingering ambiguities, if any, are to be read against the insurer," and improperly construed the Policy against Navigators. (SPA-5).

Because the existence of extrinsic evidence may enable the fact finder to resolve an ambiguity in the contract, "courts should not resort to contra proferentem until after consideration of extrinsic evidence to determine the parties' intent." *M. Fortunoff Corp. v. Peerless Ins. Co.,* 432 F.3d 127, 142 (2d Cir. 2005); *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 88 n. 7 (2d Cir. 2002); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n. 2 (2d Cir. 1983). Again, the Court appears to have improperly acted as the trier of facts not properly determined on summary judgment.

In any event, contra proferentem does not apply where contracts are negotiated by sophisticated parties of equal bargaining power. See *Cummins, Inc. v. Atl. Mut. Ins. Co.*, 56 A.D.3d 288, 867 N.Y.S.2d 81 (2008); *Westchester Fire Ins. Co. v. MCI Commc'ns Corp.*, 74 A.D.3d 551, 902 N.Y.S.2d 350 (2010); *United States Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 574 (2d Cir.1991); *Morgan*

*Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 279 (2d Cir. 2000).

As set forth above, Goyard's broker, during the placement and negotiation of the Policy, as well as through the claims process, was Marsh & McLennan Agency. MMA is a worldwide sophisticated broker with a long history of expertise and knowledge. The MMA website states that MMA has offices in over 130 countries; has been in operation since 1871, and has over 100 years of marine expertise. *https://www.marsh.com/us/about/about-marsh.html;* *https://www.marsh.com/us/industries/marine.html.*

The insurance broker, Jessica Bratz of MMA and Navigators' underwriter, Karla Scott, engaged in a negotiation process concerning the eventual issuance of the Policy. Both Jessica Bratz and Karla Scott were knowledgeable and experienced in negotiating ocean marine cargo policies. Ms. Bratz had worked in the insurance industry since 1996 (A- 1569: Bratz Dep., Pg. 87:14-20). Ms. Bratz was employed at various national brokerage houses for 21 years (Id.). Ms. Bratz was employed at MMA as a Client Service Executive since 2017 (Id.). Ms. Scott started in the insurance business in 2000 (A- 920: Scott Dep., Pg. 7: 21-23). Ms. Scott was employed as an underwriter, and later an underwriting manager, writing ocean marine cargo policies, at various U.S. insurance companies since 2000 (A-920: Scott Dep., Pgs. 7-13). Accordingly, the Court erred by construing the Policy against

Navigators even though the Policy was negotiated by sophisticated parties of equal bargaining power.

## IV.

**The District Court Erred as a Matter of Law by Incorrectly Applying a Ten Percent "Premium" in Addition to the Amount of Invoice, as the Goods Subject to Goyard's Claim are "Raw Materials, Supplies in Storage, Used Goods," which are Excluded from the Ten Percent "Premium" under Express Terms of the Policy.**

Navigators declined coverage entirely under the terms of the Policy. Alternatively, Navigators emphasized that Goyard admitted that its claim for damages is limited to the insured value of the damaged goods which amounts to $684,855.

In a footnote to the District Court's Order, the Court states that "Defendant [Navigators is incorrectly stated by the Court as "Defendant"] urges the Court to make the valuation based on classifying the goods insured as 'raw materials, supplies in storage, used goods,' which excludes the ten percent premium." (SPA at 2). The Court then states, "Nothing in the record supports a finding that the goods insured were raw material, supplies, or used goods." (Id.)

It is a fact, however, "supplies in storage" are only covered under Endorsement No. 4, entitled "Storage Coverage." The Valuation Clause in the Policy Declarations states that "Raw Materials (with no invoice), Supplies in Storage, Used

44

Goods" are valued at replacement cost or if not replaced, then actual cash value. (A-786-787).

More importantly, however, the Court incorrectly relied on a section of the Valuation Clause in the Policy that states that "goods insured are valued [at] the amount of invoice . . . plus ten (10%) percent. At her deposition, Goyard's Managing Director, Natalie Croft admitted that the insurance claim of $684,855 was based upon the retail cost for the products to Goyard NYC. (A- 1065-1066: Croft Dep., Pg. 312: 9-16; Pg. 314: 20-25 – Pg. 315: 1-4). Ms. Croft admitted that the replacement cost of the goods was $684,855. (A- 1065-1066: Croft Dep., Pg. 312: 9-16; Pg. 314: 20-25 – Pg. 315: 1-4)(A-1067: Croft Dep., Pg. 321: 6-12). This amount was only supported by Goyard's computer runs produced in discovery and marked as exhibits during Ms. Croft's deposition. (A-1065-1067).

Therefore, the applicable section of the Valuation Clause in the Policy provides that "if there is no invoice," goods insured are valued at the "Actual Cash Value" of the "goods insured" at the time of loss or damage. The 10% "mark-up" does not apply. There is no 10% "mark-up" for an insurance claim based on actual cash value. (A-795). Therefore, Goyard's claim for damages, if any, must be limited to the insured value of the goods, namely $684,855.

## *CONCLUSION*

For the reasons set forth above, this Honorable Court should reverse the District Court's Order ruling that the Policy provides coverage for Goyard's claims; and grant Navigators' Motion for Summary Judgment declaring that the Policy does not provide coverage for Goyard's claim. Alternatively, the Court should remand the case to the District Court for further consideration only on the issues of insurance coverage, valuation and the consequent award of post and prejudgment interest.

The Court's Order granting Navigators' Motion for Summary Judgment, in part, by correctly holding that Goyard's loss was caused by riots and civil commotions in the civil unrest following the death of George Floyd; and denying Goyard's claims for attorneys' fees and punitive damages, should be affirmed.

Dated: June 12, 2024

<div style="margin-left:40%">

Respectfully submitted,
KENNEDYS CMK, LLP
By:   /s/ Frank Jordan
      Frank Jordan
      /s/ Stephen V. Rible
      Stephen V. Rible
      570 Lexington Avenue
      New York, NY 10022
      Office: (212) 252-0004
      Frank.Jordan@Kennedyslaw.com
      Stephen.Rible@Kennedyslaw.com
      Attorneys for Plaintiff-Appellant-
      Cross Appellee, Navigators Insurance
      Company

</div>

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 10,796 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Time New Roman.

Dated:  June 12, 2024       Respectfully submitted,

KENNEDYS CMK, LLP
By:    /s/ Frank Jordan
       Frank Jordan
       /s/ Stephen V. Rible
       Stephen V. Rible
       570 Lexington Avenue
       New York, NY 10022
       Office: (212) 252-0004
       Frank.Jordan@Kennedyslaw.com
       Stephen.Rible@Kennedyslaw.com
       Attorneys for Plaintiff-Appellant-
       Cross Appellee, Navigators Insurance
       Company

# SPECIAL APPENDIX

## TABLE OF CONTENTS

| | Page |
|---|---|
| Order of the Honorable Alvin K. Hellerstein, dated January 31, 2024, Appealed From ........................ | SPA-1 |
| Judgment, dated January 31, 2024, Appealed From.... | SPA-8 |

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
NAVIGATORS INS. CO.,                                           :
                                                               :
                      Plaintiff/ Counterclaim Defendant,       :        **ORDER GRANTING**
                                                               :        **DEFENDANT'S MOTION FOR**
         -against-                                             :        **SUMMARY JUDGMENT AND**
                                                               :        **RELATED RELIEF**
GOYARD, INC.,                                                  :
                                                               :        20 Civ. 6609 (AKH)
                      Defendant/ Counterclaim Plaintiff.       :
                                                               :
                                                               :
                                                               :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

         This is an insurance coverage dispute.  Goyard, a luxury leather goods company

with a storefront and corporate office on the Upper East Side of New York City, suffered an

overnight break-in and loss of $684,855 in merchandise during the civil rioting following George

Floyd's murder.  The next day, June 2, 2020, Goyard filed a claim with its insurer, Navigators

Insurance Company, which Navigators denied on the grounds that its policy does not extend to

retail storage losses caused by strikes, riots, and civil commotion (SR&CC).  The parties both

seek declaratory relief in support of their competing interpretations of their insurance contract.

Goyard, as the insured, seeks also to recover litigation fees and punitive damages, and adds a

claim for breach of contract.

         After completing discovery, the parties filed cross-motions for summary

judgment.  Goyard also filed a motion to strike portions of Navigators' supporting exhibits

because they contained hearsay and improper expert testimony.  Goyard's motion for a

declaration of coverage and reimbursement of loss is granted.  Navigator's motion dismissing

1

Goyard's claim for attorneys' fees and punitive damages is granted.  Goyard's motion to strike is denied as academic.

## THE 2020 POLICY

Navigators Insurance is a marine cargo insurer that issues ocean marine open cargo policies.  Goyard, a luxury leather goods company, insured its marine cargo with Navigators through Marsh & McLennan Insurance Agency (MMA) as its broker.

The policy provides coverage to Goyard for goods during shipping and when held in specific locations listed on the declarations page, including Goyard NY's East 63rd Street location, the site of the riotous thefts.  Policy at 5.[1]  "Goods insured" include "luxury bags, wallets, fine leather goods and travel accessories."  Policy at 4.  They are to be valued "[a]t the amount of invoice, including all charges therein . . . plus ten percent." Policy at 4, 13.[2]

The policy contains "paramount" warranties, including an SR&CC warranty, that "shall not be modified or superseded . . . or endorsed hereon unless such other provision refers to the risks excluded by these Warranty(ies) and expressly assumes the said risks."  Policy at 23.

Endorsement No. 1 (SR&CC Endorsement) covers three categories of such risks: (1) "strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions," (2) "vandalism, sabotage or malicious acts," and (3) "act or acts . . . carried out for political, terroristic or ideological purposes."  Policy at 37.  "Coverage under . . . subsection (3) is conditional upon the property insured being in the ordinary course of transit . . . ."  Policy at 37.

---

[1] Citations to the policy track the pagination as designated by ECF No. 1, Ex. 1, not the underlying document.
[2] Defendant, in its summary judgment motion, urges the Court to make the valuation based on classifying the goods insured as "raw materials, supplies in storage, used goods," which excludes the ten percent premium.  Nothing in the record supports a finding that the goods insured were raw materials, supplies, or used goods.

Jessica Bratz, Goyard's insurance broker at MMA, sought coverage from her counterpart at Navigators, Karla Scott, to add coverage for retail stock throughput, or retail inventory, kept at scheduled locations. Effective January 1, 2020, Endorsement No. 4 was added. Goyard paid a 585.77% increase in premium, from $15,000 in 2019 to $102,865 in 2020. Navigators issued the complete policy, with the endorsements to MMA for Goyard, on or around March 6, 2020. Endorsement No. 4 (Storage Coverage Endorsement) provides coverage to "goods insured . . . while detained in locations approved by these Assurers subject to terms and as hereinafter provided." Policy at 44. Subsection 9(e) of the endorsement excludes certain perils. Specifically, it excludes "risks excluded by the F.C. & S and SR & CC warranties contained in the open policy, to which this coverage is attached." Policy at 46.

The flat annual premium "includes all charges for transit, war risk, SR&CC, retail inventory stock." Policy at 4.

## DISCUSSION

This is a contract construction dispute, not a factual dispute. When parties dispute the terms of an insurance contract, the court is to "to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Summary judgment is proper if the language is "wholly unambiguous." *Schiavone v. Pearce*, 79 F.3d 248, 252 (2d Cir. 1996).

### I.      Declaratory Relief & Breach of Contract

#### A.      Text of the Policy

Navigators does not dispute that the SR&CC endorsement, Endorsement No. 1, takes precedence over the SR&CC warranty. ECF No. 109 ¶31 ("The SR&CC Endorsement also takes precedence over the SR&CC Warranty"); *Cnty. of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994) ("[I]t is settled that in construing an endorsement to an insurance

policy, the endorsement and the policy must be read together, and the words of the policy remain

in full force and effect except as altered by the words of the endorsement."); *CGS Indus., Inc. v.*

*Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) ("the endorsement unambiguously

altered the original Policy, which therefore no longer governs the scope of [the insured's]

coverage"). Nor does Navigators dispute that Goyard's claim arose out of a riot or civil

commotion, which falls under SR&CC endorsement subsection (2).[3] Unlike subsection (3),

which requires goods to be "in the ordinary course of transit," subsection (2) contains no

coverage carveouts.

      The insurance contract has three clauses covering loss of property because of a

riot: the Warranties clause that excludes coverage unless added by an endorsement; Endorsement

No. 1 that adds such coverage; and Endorsement No. 4 that excludes risks excluded by the

Warranties clause. Navigators argues that Goyard's loss caused by the riot of June 1, 2020 is not

covered, because Endorsement No. 4 excludes SR&CC perils by referring back to the Warranties

clause. The Warranties Clause, however, does not entirely preclude SR&CC perils; it excludes

them only to the extent an Endorsement does not bring them back, and Endorsement No. 1 brings

back losses caused by riots. There is no basis to read Endorsement No. 4 so that it cancels

Endorsement No. 1.

      An insurance contract, like any other, must be read in its entirety, giving effect to

all its terms. *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*,

93 N.E.3d 743, 747 (N.Y. 2017). Goyard, for an additional premium, extended Navigator's

marine policy, to cover goods in its Fifth Avenue store, as well as goods being brought into that

store. It did that by procuring Endorsement No. 4. But there is no hint of an intention that, by

---

[3] It is irrelevant that goods had come to rest and were no longer "in the ordinary course of transit," as that condition
applies only to claims arising under the SR&CC endorsement's subsection (3).

adding the coverage of Endorsement No. 4, it would eliminate the coverage of Endorsement No.

1. Lingering ambiguities, if any, are to be read against the insurer. *Olin Corp. v. American Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012).

### B.    Extrinsic Evidence

Extrinsic evidence provides further support for summary judgment in Goyard's favor.  Bratz requested and negotiated for broad coverage of both SR&CC risks and retail goods coverage.  Email confirmation from Navigators supports a reading of the coverage as comprehensive.  *See* ECF No. 113, Ex. A, Email from Scott ("On our standard policy we exclude goods at retail store, I will remove that exclusion and have done so on this updated quote version"); Bratz Dep. Tr. at 111:20–25 (Q: "you were seeking broader stock throughput coverage with this Navigators policy; correct? A: Correct."); Scott Tr. at 30:10-31:4 (Navigators' stock throughput policy covers "inventory at a retail store versus what is more typical would be at a distribution center, warehouse").  Goyard's premium went up 587.77% in 2020 to reflect the additional coverage for storage coverage.

Navigators presents no testimony nor documentary evidence that either party manifested an intent to exclude retail goods coverage from SR&CC coverage expressed in Endorsement No. 1. *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 887 (N.Y. 2009) ("Whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language.  Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced.  They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction."); *Beazley Ins. Co. v. ACE American Ins. Co.*, 880 F.3d 64, 68–69 (2d Cir. 2018).

SPA-6

### C.   Recovery Value

The parties agree, per the pro forma invoice, that $684,855 of goods were stolen. ECF No. 109 ¶36, 37.  With the ten percent add-on, Goyard's recovery value is $753,340.50. Policy at 4, 13.  Since the insurance contract does not contain a provision for time of payment, interest will begin to run 30 days after demand, or beginning July 2, 2020.

### II.   Navigator's Summary Judgment Motion: Attorney's Fees & Punitive Damages

Navigators is entitled to summary judgment denying Goyard's claim for attorneys' fees and punitive damages.  Generally, "an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk." *Emps. Mut. Cas. Co. v. Key Pharms.*, 75 F.3d 815, 824 (2d Cir. 1996); *Oriska Ins. Co. v. American Textile Maint.*, 322 Fed. App'x 36, 37–38 (2d Cir. 2009).[4] The Court will not infer duties that the parties did not intend to create by contract.  Nor does the Court perceive Navigators' denial of coverage and filing of this action to be in bad faith.  *See, e.g.*, ECF No. 99, Exs. 4, 5; *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 345–46 (S.D.N.Y. 2021) (no bad faith under New York law "where there was no gross disregard for its policy obligation by the insurer in asserting noncoverage").

### III.   Goyard's Motion to Strike

Goyard's motion to strike portions of Navigators' supporting declarations and affidavits as inadmissible hearsay and improper expert testimony is denied as academic given this decision.  Some of the contested filings state opinions of Navigators' employees as to what they believe the policy meant.  That is a task for the Court, not employees of a party.

---

[4] The policy's choice of law clause provides for "US federal maritime common law or, in the absence of US federal maritime common law, the law of the state of New York." Policy at 12.  "[O]nly one state's law should govern an insurance agreement." *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003).  The parties cite to New York law for the interpretation dispute, and that is the law that I apply.

SPA-7

## CONCLUSION

For the above reasons, Goyard's motion to recover loss of its goods is granted, and judgment will be entered in the amount of $753,340.50, plus pre-judgment interest of nine percent per annum commencing July 2, 2020, plus costs as taxed by the Clerk. N.Y. C.P.L.R. § 5004(a); *Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 14cv4718, 2020 WL 7028906, at *2 (S.D.N.Y. Nov. 30, 2020). Navigators' motion to dismiss Goyard's claim for attorneys' fees and punitive damages is granted. Goyard's motion to strike is denied. The Clerk shall enter judgment as instructed, terminate all open motions, and close the case.

SO ORDERED.

Dated:      January 31, 2024
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

7

SPA-8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------X
NAVIGATORS INS. CO.,

                    Plaintiff/Counterclaim Defendant      20 **CIVIL** 6609 (AKH)

       -against-                                  **JUDGMENT**

GOYARD, INC.,

                    Defendant/Counterclaim Plaintiff
------------------------------------------------------------------------------X

      It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the Court's Order dated January 31, 2024, Goyard's motion to recover loss of its goods is granted, and judgment will be entered in the amount of $753,340.50, plus pre-judgment interest of nine percent per annum commencing July 2, 2020 amounting to $242,967.79, plus costs as taxed by the Clerk. N.Y. C.P.L.R. § 5004(a); Fireman's Fund Ins. Co. v, OneBeacon Ins. Co., 14cv4718, 2020 WL 7028906, at *2 (S.D.N.Y. Nov. 30, 2020). Navigators' motion to dismiss Goyard's claim for attorneys' fees and punitive damages is granted. Goyard's motion to strike is denied. Accordingly, the case is closed.

**Dated:**  New York, New York
         January 31, 2024

                                **RUBY J. KRAJICK**
                                **Clerk of Court**

               **BY:**   _____

                                  **Deputy Clerk**